IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RODNEY COSTER,                              *

      Plaintiff,                          *

v.                                         *          Civil Action No. GLR-21-65

THE STATE OF MARYLAND, et al.,             *

      Defendants.                        *
                                  ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant the State of Maryland's (the "State") Motion to Dismiss the Amended Complaint (ECF No. 43) and Defendants Harford County Sheriff's Office, Harford County Detention Center, Warden Michael Capasso, Deputy First Class ("DFC") Donald Licato, DFC Christopher Majewski, DFC Mark Jeric, DFC Kevin Bliss, DFC Matthew Norton, DFC Derek Seman, DFC Stavros Kalambihis, DFC Joe DiBartolo, DFC Nicholas Robinson, Sgt. Andrew Meador, Cpl. Nickolas Goins, and Does 1 to 20's (collectively, "County Defendants")[1] Motion to Dismiss Amended Complaint (ECF No. 46). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant the Motions in part and deny the Motions in part.[2]

---

[1] The Court will hereinafter refer to Defendants Harford County Sheriff's Office and Harford County Detention Center as "Harford County Defendants." The Court will refer to Defendants Capasso, Licato, Majewski, Jeric, Bliss, Norton, Seman, Kalambihis, DiBartolo, Robinson, Meador, Goins, and Does 1 to 20 collectively as "Individual Defendants."

[2] Also pending before the Court are Defendants' Motions to Dismiss the original Complaint (ECF Nos. 29, 30, 31, 32, 33, 34, 35, 36); a Motion for Leave to File Audio

## I.   BACKGROUND

**A.   Factual Background**

### 1.   Plaintiff's Allegations[3]

Plaintiff Rodney Coster ("Coster") was diagnosed with Bipolar I Disorder decades ago. (Am. Compl. ¶ 1, ECF No. 37). On January 10, 2018, Coster went to visit his mother, Sharon Coster ("Ms. Coster") for her birthday. (Id.). Coster is just over five feet tall and, at the time of the visit, was unarmed, over fifty years old, and weighed approximately 145 pounds. (Id. ¶ 3). Coster was not making sense upon his arrival and Ms. Coster immediately determined that he was having a mental health crisis. (Id. ¶ 1). Ms. Coster persuaded her son to drive her to the Harford County Sheriff's Office (the "Sheriff's Office"), located at the Harford County Detention Center (the "Detention Center"), so that she could get him help. (Id.).

Coster and his mother arrived at the Detention Center around 8:00 a.m. (Id. ¶ 52). After arriving, they waited in the car until Defendants Licato and Majewski pulled up in front of them in a police cruiser. (Id. ¶ 2). Ms. Coster approached Licato and explained that

Recording as Exhibit (ECF No. 58); and a Motion for Leave to File Surreply (ECF No. 64). The original Motions to Dismiss were rendered moot by Coster's Amended Complaint (ECF No. 37). See Venable v. Pritzker, No. GLR-13-1867, 2014 WL 2452705, at *5 (D.Md. May 30, 2014) ("When a plaintiff files an amended complaint, it generally moots any pending motions to dismiss because the original complaint is superseded."), aff'd, 610 F.App'x 341 (4th Cir. 2015). Accordingly, the Court will deny the Motions to Dismiss the original Complaint (ECF Nos. 29, 30, 31, 32, 33, 34, 35, 36) without prejudice as moot. For reasons set forth in more detail below, the Court will grant the Motion for Leave to File Audio Recording as Exhibit and the Motion for Leave to File Surreply.

[3] Unless otherwise noted, the Court takes the following facts from the Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Coster "was bipolar and was not taking his medicine," and asked them to assist in "connecting him with trained mental health professionals." (Id. ¶¶ 2, 54). She tried to provide Licato additional details, but he left and approached the driver's side of the car, where Coster was seated. (Id. ¶¶ 54–55).

Licato was joined by Majewski and the two of them began questioning Coster. (Id. ¶¶ 4, 56). Coster "responded in the manner of a person in the midst of an acute mental health crisis by saying that no one could help him and repeating over and over, largely to himself, that 'everything's going to be [okay.]'" (Id.). Majewski and Licato then "briefly tried to pull Mr. Coster out of the car," but Coster "resisted passively, shrinking away from the officers and seeking to avoid being pulled out of the vehicle." (Id. ¶¶ 5, 58). Seconds after this initial attempt, Majewski "drew his Taser, aimed it at Mr. Coster, and repeatedly tased him." (Id. ¶¶ 5, 59). After the Taser barbs "impaled" Coster, Majewski "delivered four Taser cycles (lasting 5 seconds, 2 seconds, 3 seconds and 5 seconds) over the following 20 seconds." (Id. ¶ 60). Majewski then hit Coster with a Taser "stun drive," "appl[ying] the Taser directly to Mr. Coster's leg, point blank, for 3 seconds." (Id. ¶ 61).

Majewski and Licato then removed Coster from the car and pulled his sweatshirt over his head. (Id. ¶¶ 6, 77–78). While Coster was "doubled over and at times lying on the asphalt next to the car," "one of the deputies repeatedly punched and kneed Mr. Coster, including delivering several overhand 'hammer-fist' punches to the back of Mr. Coster's head." (Id. ¶ 6). Majewski and Licato then moved Coster onto an adjacent lawn and, in doing so, "caused his pants to fall down—exposing him in front of his mother." (Id. ¶ 7). Within seconds of moving Coster onto the lawn, "a total of at least seven Individual

Defendants piled on top of Mr. Coster, including, but not limited to, Warden Capasso, Deputies Majewski and Licato, and on information and belief, Defendants Jeric, Bliss, Norton, Robinson, Seman, and Kalambihis." (Id. ¶ 8). Coster was unable to move under the weight. (Id.). Despite this, "Majewski continued to punch Mr. Coster while kneeling on his head and neck, while other Individual Defendants in the dogpile were striking Mr. Coster with their fists and knees." (Id.).

After several minutes, unspecified Individual Defendants put Coster in handcuffs and leg irons. (Id. ¶ 9). Despite this restraint, "several of the Individual Defendants continued to stand on Mr. Coster and to kneel on his back, neck and head," while other Individual Defendants milled around and watched. (Id.). After about five minutes, medical personnel arrived on the scene and walked toward Coster, but rather than allowing them access to Coster, Individual Defendants turned the medical personnel away. (Id. ¶ 10).

Approximately five minutes after the medical personnel left, Individual Defendants stood Coster up and left him standing for an additional fifteen minutes. (Id. ¶ 11). At this time, two Individual Defendants "lifted Mr. Coster off the ground by his elbows while his arms were still cuffed behind his back" and "marched him toward the Harford County Detention Center." (Id. ¶ 12). Coster describes this as a "stress position" that is "highly painful and very likely to result in injuries." (Id.). The manner in which they were carrying Coster caused him to flip over, so the two Individual Defendants "carried him across the parking lot into the Harford County Detention Center upside down with his face just a few inches above the pavement." (Id. ¶ 13).

4

Coster sustained a number of injuries during the altercation: "his left shoulder was dislocated, he had extensive lacerations and bruising, including a bruised and/or fractured rib, his clothes were bloodied, and his glasses were broken." (<u>Id.</u> ¶ 96). Coster believes the dislocation of his shoulder occurred during the "frog march[]" he endured while handcuffed. (<u>Id.</u> ¶ 12, 91). According to Coster, at no time during the course of these events did he fight or otherwise actively resist the Individual Defendants. (<u>Id.</u> ¶ 14).

On January 11, 2018, Goins, Meador, and DiBartolo transported Coster to the hospital to treat the injuries he sustained the previous day. (<u>Id.</u> ¶ 16). During the procedure to repair his dislocated shoulder, hospital staff asked that Coster change positions. (<u>Id.</u> ¶ 108). When he did so, hospital staff began to tighten a weighted medical device used to relocate the shoulder. (<u>Id.</u>). This caused Coster to become "extremely agitated," and he "yelled and tried to pull away from the hospital staff." (<u>Id.</u>). Meador asserted that Coster kicked him during this incident, but Coster states that if he did so, it was inadvertent and caused by him reacting to the painful medical procedure. (<u>Id.</u> ¶ 109).

Coster believes that in response, one of the Individual Defendants instructed hospital staff to exit the room. After they left, "Goins began striking Mr. Coster in the face while the other two other Individual Defendants pinned him to the bed. By the end of the incident, Mr. Coster's face and chest were bloody, and his clothing had to be cut away and discarded." (<u>Id.</u> ¶ 111).

### 2.    Criminal Proceedings

In their Motions to Dismiss and Replies, Defendants provide the Court copies of records detailing criminal charges that were brought against Coster. (<u>See</u> Docket Entries

for <u>State v. Coster</u>, Dist. Ct. for Harford County, Case No. 2R00113766 ["Jan. 10 Crim. Docket"], ECF No. 43-2; Docket Entries for <u>State v. Coster</u>, Dist. Ct. for Harford County, Case No. 2R00113778 ["Jan. 11 Crim. Docket"], ECF No. 43-3; Incident Report for Jan. 10, 2018 Arrest ["Incident Report"], ECF No. 46-2; Transcript of May 14, 2018 Hr'g, <u>State v. Coster</u>, Dist. Ct. for Harford County, Case Nos. 2R00113766, 2R00113778 ["Hr'g Tr."], ECF No. 57-3). The Court will take judicial notice of the existence of these documents and the underlying proceedings for the purpose of reviewing Defendants' Motions.[4] Because the Court will take judicial notice of these documents, it will also grant County Defendants' Motion for Leave to File Audio Recording as Exhibit (ECF No. 58), which merely presents

---

[4] Under Federal Rule of Evidence 201(b), a court may take judicial notice of a fact only if it is "one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evidence or testimony from another litigation can reasonably be questioned. <u>See</u> <u>Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.</u>, 146 F.3d 66, 71 (2d Cir. 1998). Thus, "courts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted . . . , but rather to establish the fact of such litigation and related filings." <u>Sher v. Luxury Mortg. Corp.</u>, No. ELH-11-3656, 2012 WL 5869303, at *7 (D.Md. Nov. 19, 2012) (quoting <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991)). In other words, "[t]here is an important distinction between taking judicial notice of documents filed in other courts and using judicial notice to bind a party to the truth of the matters asserted in the court filings. The latter is not typically permitted." <u>See</u> <u>Veteran Constructors, Inc. v. Beeler Barney & Assocs. Masonry Contractors, Inc.</u>, No. 2:13-CV-64-F, 2014 WL 4199238, at *8 (E.D.N.C. Aug. 22, 2014). In the context of a criminal proceeding, this Court has held that it may take judicial notice of the plea, but not its contents. <u>See</u> <u>Sher</u>, 2012 WL 5869303, at *6–8.

Here, the Court will take judicial notice of the fact of the underlying state proceedings but need not accept as true any statements or conclusions reached in those proceedings. Thus, the Court will take notice of the fact that the State read its version of events into the record in Coster's criminal proceeding, but will not treat the State's version of events as true.

the Court with an alternate format through which to review Coster's May 14, 2018 hearing at the District Court for Harford County.

The documents provided by Defendants reflect that criminal charges were filed against Coster for the incidents on January 10 and 11, 2018. With respect to the January 10, 2018 incident outside the Detention Center, Coster was charged with two counts of second-degree assault, one count of resisting arrest, and one count of assault on a law enforcement officer. (See Jan. 10 Crim. Docket at 3–4). Of these, one of the counts for second-degree assault count and the resisting arrest count were placed on the "stet docket," and the remaining count for assault on a law enforcement officer was nolle prosequi. (Id.). With respect to the January 11, 2018 incident at the hospital, Coster was charged with one count of second-degree assault, one count of assault on a Detention Center employee, and one count of resisting arrest. (See Jan. 11 Crim. Docket at 3). Of these charges, the second-degree assault count was placed on the stet docket, and the remaining counts for assault on a detention center employee and resisting arrest were nolle prosequi. (Id.).

With respect to the remaining count for second-degree assault arising from the January 10, 2018 incident, Coster pleaded not guilty with an agreed statement of facts. (Hr'g Tr. at 13). The prosecutor read the following statement of facts into the record:

> On January 10, 2018, deputies responded to the detention center located on Rock Spring Road in Harford County, Maryland in reference to a domestic disturbance.
>
> While en route, the deputies were advised that the subjects were seated in a white passenger vehicle near the flagpole towards the public entrance of the detention center. Upon arrival, deputies located that vehicle and the two subjects near the public entrance. They made contact with the male

seated in the driver's seat of the vehicle, who they identified as the defendant seated to my left at trial table with counsel. The female subject was outside of the vehicle.

Deputy Licato was attempting to interview the defendant, who wouldn't answer any questions and kept repeating that everything was okay. While Deputy Licato was interviewing the defendant, the defendant dropped his left hand out of sight, as if reaching for something. At this time, Deputy Licato repeatedly ordered the defendant to show his hands, but the defendant was noncompliant.

After repeating the order several times to no avail, the deputy, along with Deputy Majewski opened the driver's door and ordered the defendant to exit the vehicle. The defendant refused to exit and began to try to kick and punch at Deputy Licato and Deputy Majewski. Both deputies tried to grab the defendant to remove him from the vehicle, but he kept kicking at the deputies.

At this point and after numerous warnings that he would be tased if he continued to resist, Deputy Majewski deployed his taser, the probes struck the defendant in the abdomen area and were close in proximity to each other so they had minimal effect on the defendant. Both deputies continued to try and restrain the defendant. And after the deputies arrived with -- and at that time, other deputies arrived to assist in placing the defendant in handcuffs. As a result of the incident, Deputy Licato sustained a significant injury to his upper body area including his arm, which required transportation by EMS for medical treatment. He also received scratches around his eye area.

The State would be entering into evidence photos of the defendant and the vehicle – You've seen those. – and then pictures of Deputy Licato.

And while he's looking through the photos, I would state for the record that all events did occur in Harford County, Maryland and all witnesses called would identify the defendant as the person who assaulted Deputy Licato on that day.

(Id. at 22–24). After the prosecutor finished reading the statement of facts, counsel for Coster responded, "we agree that the State's witnesses would have testified consistently with the facts that the prosecutor just read into the record." (Id. at 24). Based on the statement of facts, the court found Coster guilty of one count of second-degree assault. (Id. at 25). The court sentenced Coster to three years' confinement, with two years and 240 days of the sentence suspended. (Id. at 39; Jan. 10 Crim. Docket at 3).

**B.   Procedural History**

Coster filed this action on January 8, 2021. (ECF No. 1). Defendants filed Motions to Dismiss the original Complaint on April 16, 2021. (ECF Nos. 29, 30, 31, 32, 33, 34, 35, 36). Coster responded to the Motions by filing an Amended Complaint on May 7, 2021. (ECF No. 37).

In his ten-count Amended Complaint, Coster alleges: Failure to Provide Reasonable Accommodations in Violation of Title II of the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), against the State and Harford County Defendants (Count I); Failure to Train in Violation of Title II of ADA against the State and Harford County Defendants (Count II); Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. (the "Rehabilitation Act"), against the State and Harford County Defendants (Count III); Unreasonable Seizure in Violation of the Fourth Amendment against the Individual Defendants (Count IV); Excessive Force in Violation of the Fourth Amendment against the Individual Defendants (Count V); Excessive Force in Violation of the Fourteenth Amendment against Meador, Goins, and DiBartolo (Count VI); False Arrest in violation of Maryland Common Law against the Individual Defendants (Count VII);

Battery in violation of Maryland Common Law against the Individual Defendants (Count VIII); Battery in Violation of Maryland Common Law against Meador, Goins, and DiBartolo (Count IX); and Bystander Liability in Violation of the Fourth and Fourteenth Amendments against the Individual Defendants (Count X). (Am. Compl. ¶¶ 115–90). Plaintiffs seek compensatory damages, punitive damages, statutory and actual damages, attorneys' fees and costs, and declaratory and injunctive relief. (Id. ¶¶ 191–204).

On May 25, 2021, Board Defendants filed a Motion to Dismiss the Amended Complaint. (ECF No. 43). On May 28, 2021, County Defendants filed a Motion to Dismiss Amended Complaint. (ECF No. 46). Coster filed Oppositions to both Motions on June 18, 2021. (ECF Nos. 51, 52). The State and County Defendants filed Replies on July 9, 2021. (ECF Nos. 57, 59). County Defendants accompanied their Reply with a Motion for Leave to File Audio Recording as Exhibit (ECF No. 58). Coster filed an Opposition to the Motion on July 23, 2021, (ECF No. 60), and County Defendants filed a Reply on August 6, 2021, (ECF No. 63). Coster also filed Motion for Leave to File Surreply to the State's Reply on August 6, 2021, along with a proposed Surreply. (ECF Nos. 64, 64-1). The State filed an Opposition on August 20, 2021. (ECF No. 65).

## II.   DISCUSSION

### A.   <u>**Standard of Review**</u>

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if

it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

B.     **Analysis**

1.     **Arguments Raised in Defendants' Replies**

Coster argues that this Court should decline to consider certain arguments raised for the first time in Defendants' Replies. Specifically, Coster objects to the Court considering Defendants' arguments that his claims are barred under the doctrines of judicial notice or judicial estoppel, or under the Supreme Court holding in Heck v. Humphrey, 512 U.S. 477 (1994). (See Pl.'s Mem. Opp'n Cnty. Defs.' Mot. Leave File Audio Recording as Ex. ["Opp'n Mot. Leave"] at 7, ECF No. 60; Pl.'s Surreply Mem. Opp'n State Md.'s Mot. Dismiss Am. Compl. ["Surreply to State"] at 2, ECF No. 64-1).

This Court has held that "[b]y failing to raise and argue [a] point in their initial Motion, Defendants waived it." Rose v. Harloe Mgmt. Corp., No. GLR-16-761, 2017 WL 193295, at *6 n.3 (D.Md. Jan. 17, 2017); see also Clawson v. FedEx Ground Package Sys., Inc., 451 F.Supp.2d 731, 734 (D.Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered."); Sher v. Luxury Mortg. Corp., No. ELH-11-3656, 2012 WL 5869303, at *9 n.11 (D.Md. Nov. 19, 2012) (concluding defendant's argument was waived because defendant did not raise it until reply brief). But as Defendants correctly counter, "the power to decline consideration of such arguments is discretionary, and courts are not precluded from considering such issues in appropriate circumstances." Clawson, 451 F.Supp.2d at 734. "The concern that the ordinary rule addresses is 'that [an] opposing party would be prejudiced by an advocate arguing an issue without an opportunity for the opponent to respond.'" Id. at 735 (quoting United States v. Head, 340 F.3d 628, 630 n.4 (8th Cir. 2003)).

Defendants argue that considering the arguments advanced in Defendants' Replies will not prejudice Plaintiff. According to Defendants, Coster was on notice "since as early as April 2021" that Defendants were seeking to obtain materials related to the underlying criminal proceeding and, indeed, made several arguments relating to that proceeding in their original Motions. (Cnty. Defs.' Reply Pl.'s Opp'n Mot. Leave File Audio Recording as Ex. ["Reply Mot. Leave"] at 9, ECF No. 63). County Defendants further note that their arguments relating to judicial estoppel were "closely related" to the Heck arguments County Defendants made in their original Motion. (Id.). Finally, Defendants note that through Coster's Surreply and his Opposition to County Defendants' Motion for Leave, Coster had the opportunity to contest any arguments raised for the first time in Defendants' Replies.

The Court agrees with Defendants. While the ordinary rule is that the Court will not consider an argument raised for the first time in a reply, this situation warrants departure from that rule. First, Defendants previewed their intent to rely on materials relating to Coster's criminal proceeding and seek to exclude Coster's claims on that basis in both of their Motions to Dismiss. (See State Md.'s Mem. Law Supp. Mot. Dismiss Am. Compl. ["State Mot."] at 10 n.5, ECF No. 43-1; Mem. Law Supp. Mot. Dismiss Am. Compl. ["Cnty. Defs.' Mot."] at 6–12, ECF No. 46-1). Indeed, Coster's argument is particularly unpersuasive in the context of County Defendants, whose Motion contains detailed Heck arguments relating to Coster's conviction. Second, the Court will grant Coster's Motion for Leave to File Surreply (ECF No. 64) regarding the State's Motion and, as County Defendants argue, "[t]he instant Motion for Leave gave Plaintiff opportunity to file what

is, in essence, a surreply to the Motion to Dismiss." (Reply Mot. Leave at 9). Perhaps most critically, the Court will not dismiss Coster's claims on the basis of arguments raised for the first time in either of Defendants' Replies. Accordingly, Coster has not been prejudiced by the Court's consideration of those arguments.[5]

### 2.   Judicial Estoppel

According to Defendants, "[w]ell-settled principles of judicial estoppel bar Coster from relying on any allegations in his amended complaint that are inconsistent with his judicial admissions in his criminal case." (State Md.'s Reply Pl.'s Opp'n Mot. Dismiss Am. Compl. ["State Reply"] at 6, ECF No. 59; see also Reply Pl.'s Opp'n Cnty. Defs.' Mot. Dismiss ["Cnty. Reply"] at 5 ("Judicial Estoppel and Heck Foreclose Plaintiff's Ability To Proceed[.]"), ECF No. 57). At bottom, the Court disagrees and will not bar Coster's claims under the doctrine of judicial estoppel.

"The doctrine of judicial estoppel prevents a party from adopting a position inconsistent with a position taken in prior litigation." Tyree v. Baltimore Cnty., No. RDB-10-1084, 2011 WL 836427, at *2 (D.Md. Mar. 4, 2011) (citing Zinkand v. Brown, 478 F.3d 634, 638 (4th Cir. 2007)). "The purpose of judicial estoppel is to prevent litigants from 'playing fast and loose with the courts, and to protect the essential integrity of the judicial process.'" Id. (quoting Lowery v. Stovall, 92 F.3d 219, 223 (4th Cir. 1996)). A

---

[5] For similar reasons, the Court will grant County Defendant's Motion for Leave to File Audio Recording as Exhibit (ECF No. 58). The audio recording in question is merely an audio version of the transcript attached to the State's Reply. As set forth in Section I.A.2, supra, the Court will take judicial notice of these documents but will not accept their contents as true.

court should find that judicial estoppel bars a plaintiff's claims if the defendant establishes that: "(1) [plaintiff's] positions are inconsistent, (2) [plaintiff's] prior inconsistent position must have been accepted by the tribunal in the prior proceeding, and (3) [plaintiff] must have acted in bad faith, intentionally misleading either court to gain an unfair advantage." Id. (citing Zinkand, 478 F.3d at 638).

Defendants argue that, insofar as Coster's claims are premised on allegations that are inconsistent with the statement of facts read into the record in his criminal proceeding, those claims should be judicially estopped. As Section I.A, supra, makes plain, certain of Coster's allegations in this case do clearly conflict with the statement of facts read into the record in his criminal proceeding. This Court has held that plaintiffs who previously pleaded not guilty with an agreed statement of facts are judicially estopped from later advancing a civil claim premised on allegations inconsistent with those facts. See, e.g., Tyree, 2011 WL 836427, at *3.

Some context will demonstrate how the facts in this case are materially distinguishable from those presented in the Court's opinion in Tyree. "Amidst the spectrum between not guilty pleas and guilty pleas, there exists the hybrid plea," through which a party proceeds "[b]y pleading not guilty and agreeing to the proffer of stipulated evidence or an agreed statement of facts." Bishop v. State, 7 A.3d 1074, 1085 (Md. 2010). But as the Court of Special Appeals explained and the Court of Appeals adopted:

> There is a distinction between an agreed statement of facts and evidence offered by way of stipulation. Under an agreed statement of facts both [the] State and the defense agree as to the ultimate facts. Then the facts are not in dispute, and there can be, by definition, no factual conflict. The trier of fact is not

> called upon to determine the facts as the agreement is to the truth of the ultimate facts themselves. There is no fact-finding function left to perform. To render judgment, the court simply applies the law to the facts agreed upon. . . .
>
> On the other hand, when evidence is offered by way of stipulation, there is no agreement as to the facts which the evidence seeks to establish. Such a stipulation only goes to the content of the testimony of a particular witness if he were to appear and testify. The agreement is to what the evidence will be, not to what the facts are. Thus, the evidence adduced by such a stipulation may well be in conflict with other evidence received.

Id. at 1085–86 (quoting Barnes v. State, 354 A.2d 499, 505–06 (Md.Ct.Spec.App. 1976)). But the Court of Appeals cautioned that "a determination of whether a proffer is stipulated evidence or an agreed statement of facts is a matter of substance over form." Id. at 1086. The court further noted that on multiple prior occasions, it had held that a "case that proceeded on what the court, prosecutor, and defense counsel referred to as a 'not guilty statement of facts'" was nevertheless a stipulation of evidence where "the parties were merely stipulating as to what the testimony would be at trial." Id. at 1086–87 (citing Bruno v. State, 632 A.2d 1192, 1194, 1201 (Md. 1993); Taylor v. State, 879 A.2d 1074, 1079–80 (2005)).

Defendants argue that this case involves an agreed statement of facts rather than stipulated evidence and, in support thereof, point to the numerous times at the hearing where counsel for Coster asserted that Coster was pleading "not guilty, agreed statement of facts." But this is precisely the argument rejected by the Court of Appeals in Bishop. In Bishop, rather than agreeing to the statement of facts recounted by the prosecutor, the defense counsel responded "that the 'defense would agree that the young ladies would

testify as such,' and the State's characterization of [a witness's] statement as how she 'would have testified had this gone to trial.'" Id. at 1089. Similarly, here, after the prosecutor concluded reading the statement of facts into the record, counsel for Coster responded, "we agree that the State's witnesses would have testified consistently with the facts that the prosecutor just read into the record." (Hr'g Tr. at 24). Apart from pleading "not guilty agreed statement of facts," neither Coster nor his counsel ever expressly conceded that the statement of facts the prosecution read into the record was true. In Bishop, the Court of Appeals found that this language, "despite the label affixed to this plea," made "clear that the parties had no agreement as to the ultimate facts of the case and, at best, were stipulating to the evidence that the State would have presented at trial." Bishop, 7 A.3d at 1089.

The Court similarly finds here that Coster merely stipulated as to the evidence the State would present against him in his criminal proceeding. Because Coster did not agree to the truth or accuracy of the statement of facts entered into the record by the prosecutor in the criminal proceeding, those statements cannot constitute a "prior inconsistent position" that conflicts with Coster's allegations in this case. Accordingly, Coster's claims are not subject to judicial estoppel.

### 3. Heck v. Humphrey

In Heck v. Humphrey, the Supreme Court held that "in order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on

direct appeal" or otherwise invalidated. 512 U.S. at 486–87.[6] Some claims, however, do not necessarily imply the validity of a conviction or sentence, and therefore <u>Heck</u> does not bar them. <u>See</u> <u>Marcantoni v. Bealefeld</u>, 734 F.App'x 198, 199 (4th Cir. 2018) (noting that <u>Heck</u> did not bar the plaintiff's § 1983 suit for damages for an unreasonable search under the Fourth Amendment, even though evidence from the search was introduced at a criminal trial that resulted in the plaintiff's unreversed conviction (citing <u>Heck</u>, 512 U.S. at 487 & n.7)).

The State argues that the <u>Heck</u> doctrine bars Counts I, II, and III of the Amended Complaint, and County Defendants argue that <u>Heck</u> bars Counts IV, VII, and VIII. At bottom, the Court finds that Counts IV and VII are barred by <u>Heck</u>, but will permit the balance of the Amended Complaint to survive a <u>Heck</u> challenge at the motion to dismiss stage.

As an initial matter, it does not matter in the <u>Heck</u> context that Coster pleaded not guilty, i.e., that he did not concede the truth of the allegations against him in the criminal proceeding. "[T]he <u>Heck</u> doctrine derives from the existence of a valid conviction, not the mechanism by which the conviction was obtained . . . ." <u>Havens v. Johnson</u>, 783 F.3d 776, 784 (10th Cir. 2015) (rejecting distinction between a guilty plea and an <u>Alford</u> plea). Thus, "the dispositive question in determining whether <u>Heck</u> applies" is whether a finding that defendants are civilly liable under the claims advanced by Coster would "necessarily call

---

[6] Neither party argues that Coster's criminal conviction for second-degree assault was reversed on appeal or otherwise invalidated.

into question the validity of [Coster's] conviction." <u>Ballard v. Burton</u>, 444 F.3d 391, 398 (5th Cir. 2006).

Here, the statement of facts on which Judge Cooper of the District Court for Harford County, Maryland found Coster guilty did not describe any events that took place on January 11, 2018; indeed, Judge Cooper did not find Coster guilty of an assault that occurred on that day. Thus, <u>Heck</u> clearly does not foreclose claims arising from actions that occurred on January 11, 2018. <u>Heck</u> also clearly does not foreclose a finding in Coster's favor regarding events that occurred on January 10, 2018, after the fact narrative described in the underlying proceeding, i.e., after Coster was placed in handcuffs. This includes the dislocation of Coster's shoulder.

At the motion to dismiss stage, rather than parsing out specific factual allegations in each count of the Amended Complaint that may require a finding inconsistent with Coster's guilty verdict, the Court will decline to dismiss on the basis of <u>Heck</u> those counts that are premised, in whole or in part, on allegations that Coster could prove without invalidating his conviction. <u>See</u> <u>Tolley v. Rockbridge Reg'l Drug Task Force</u>, No. 7:19-CV-00863, 2020 WL 2499705, at *5 (W.D.Va. May 14, 2020) (finding that plaintiff "does not plead facts in his complaint here that are inconsistent with guilt, at least as to most of his claims. . . . Upon further factual development, though, the result under <u>Heck</u> might be different."); <u>see also</u> <u>Covey v. Assessor of Ohio Cnty.</u>, 777 F.3d 186, 198 (4th Cir. 2015) ("Because we cannot make this determination on the record, we hold that <u>Heck</u> does not bar any of [plaintiff's] claims for purposes of the defendants' motions to dismiss. We leave it to the district court on remand to decide at summary judgment whether <u>Heck</u> bars <u>any</u> of

[plaintiff's] claims."). Accordingly, the Court declines to dismiss Counts I, II, III, V, VI, VIII, IX, and X—all of which are premised, in part or in whole, on allegations that Coster could prove without invalidating his conviction—on the basis of <u>Heck</u>. At the summary judgment stage, with the factual record more fully developed, Defendants may again move for judgment in their favor on Coster's surviving claims on the basis that a finding in his favor on those claims would necessarily call into question the validity of his conviction.

Certain of Coster's claims, however, clearly cannot survive a <u>Heck</u> challenge even at this early stage of the litigation. Specifically, Coster's claims for unreasonable seizure and false arrest (Counts IV and VII) are barred by <u>Heck</u>. This is so because those claims rest on, <u>inter alia</u>, allegations that Defendants did not "have a warrant or probable cause to arrest or detain Mr. Coster," (Am. Compl. ¶ 153), and "effect[ed] an initial detention of Mr. Coster without cause," (<u>id.</u> ¶ 175). Critically, these are not superfluous allegations, but rather, are elemental to those claims. <u>See</u> <u>Smith v. Aita</u>, No. CCB-14-3487, 2016 WL 3693713, at *3 (D.Md. July 12, 2016) ("To demonstrate false arrest, a plaintiff must show that he was arrested without probable cause."), <u>aff'd</u>, 711 F.App'x 163 (4th Cir. 2018); <u>Osborne v. Georgiades</u>, No. RDB-14-182, 2015 WL 6447503, at *4 (D.Md. Oct. 23, 2015) ("If a plaintiff alleges that police officers seized him 'pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor,' then he has sufficiently stated a claim for unreasonable seizure under the Fourth Amendment." (quoting <u>Brooks v. City of Winston-Salem</u>, 85 F.3d 178, 183 (4th Cir. 1996))), <u>aff'd</u>, 679 F.App'x 234 (4th Cir. 2017).

Coster argues that these claims may survive and directs the Court's attention to multiple Fourth Circuit cases finding that "[a] claim for false arrest . . . does not by its nature call into question the validity of a conviction." Dizzley v. Garrett, 836 F.App'x 157, 158 (4th Cir. 2021) (quoting Reynolds v. Jamison, 488 F.3d 756, 767 (7th Cir. 2007)); see also Brooks v. City of Winston-Salem, 85 F.3d 178, 182 (4th Cir. 1996) ("[A] charge that probable cause for a warrantless arrest was lacking, and thus that the seizure was unconstitutional, would not necessarily implicate the validity of a subsequently obtained conviction—at least in the usual case."). The Court does not dispute the continued vitality of these precedents. But the fact a claim for false arrest does not necessarily implicate the validity of a conviction does not mean that a claim for false arrest cannot implicate the validity of a conviction.

In this case, a finding in Coster's favor as to Counts IV and VII would, in fact, necessarily implicate the validity of his conviction. Indeed, in Heck, the Supreme Court provides a specific example of "a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful." Heck, 512 U.S. at 487 n.6. The Heck Court's example of such an unviable claim is as follows:

> A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a lawful arrest. (This is a common definition of that offense.) He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been

> convicted. Regardless of the state law concerning res judicata,
> the § 1983 action will not lie.

Id. (citations omitted). Counts IV and VII in this action closely resemble the example provided by the Supreme Court in Heck.

The state court found Coster guilty of assault in the second degree. (Hr'g Tr. at 25). Coster argues that Defendants lacked probable cause for the arrest following the assault. In Maryland, probable cause exists if the evidence before the law enforcement officer is "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect [has] committed . . . an offense." Gray v. State, No. CCB-02-0385, 2004 WL 2191705, at *6 (D.Md. Sept. 24, 2004) (quoting Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998)). Whether there is probable cause depends on the totality of the circumstances. Gilliam v. Sealey, 932 F.3d 216, 234 (4th Cir. 2019) (quoting Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017)). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." Id. (quoting United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998)). "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." Id. (quoting Gray, 137 F.3d at 769). Whether probable cause to arrest exists is based only on the information the officers had at the time of the arrest. Id. (first citing Munday, 848 F.3d at 253; then citing Graham v. Gagnon, 831 F.3d 176, 184 (4th Cir. 2016)). The court does not consider "the subjective beliefs of the arresting officers to determine whether they thought that the facts constituted probable cause." Id. (quoting Munday, 848 F.3d at 253).

Here, the state court found Coster guilty of second-degree assault on the basis of certain actions that occurred prior to his arrest. Specifically, the state court made its judgment based on stipulated evidence that, <u>inter alia</u>: Coster "dropped his left hand out of sight, as if reaching for something," and after Licato "repeatedly ordered [Coster] to show his hands," Coster "was noncompliant," (Hr'g Tr. at 23); Coster "refused to exit [the vehicle] and began to try to kick and punch at Deputy Licato and Deputy Majewski," and after they tried to remove him "kept kicking at the deputies," (<u>id.</u>); and that Coster was only tased "after numerous warnings that he would be tased if he continued to resist," (<u>id.</u>). Those actions, which the state court determined were witnessed by and, indeed, inflicted on, the arresting officers, provided probable cause for the arrest.[7] Accordingly, the Court cannot find that Defendants lacked probable cause without necessarily calling into question the validity of Coster's conviction. As a result, Counts IV and VII, which require a finding that Defendants lacked probable cause, are barred by <u>Heck</u>.

### 4. Claims Against Harford County Sheriff's Office and Detention Center

As Defendants correctly argue, Maryland courts have long recognized that a county sheriff's office is not a legal entity capable of being sued. <u>See, e.g.</u>, <u>Kronk v. Carroll Cnty.</u>, No. L-11-0277, 2012 WL 245059, at *6 (D.Md. Jan. 25, 2012) ("In Maryland, it is well established that the office of a county sheriff is not an agency susceptible of being sued."); <u>Boyer v. State</u>, 594 A.2d 121, 128 n.9 (Md. 1991) ("Neither the Constitution nor any other

---

[7] Coster's argument that he "does not challenge his seizure and arrest for the misdemeanor assault conviction," but rather some undefined and apparently separate event that happened beforehand, (<u>see</u> Pl.'s Mem. Opp'n Cnty. Defs.' Mot. Dismiss ["Opp'n to Cnty."] at 30, 31, ECF No. 51), is mystifying and ultimately unpersuasive.

provision of law of which we are aware creates a governmental agency known as the 'Sheriff's Department.' Consequently, . . . [it] is not an entity capable of being sued."); Hines v. French, 852 A.2d 1047, 1071 (Md.Ct.Spec.App. 2004) (holding that "the Harford County Sheriff's Office is not a separate legal entity capable of being sued and, consequently it was properly dismissed as a defendant"). Likewise, a county detention center operated by a sheriff is also not subject to suit. See McMahon v. Cnty. Comm'rs of Kent Cnty., No. JFM-13-490, 2013 WL 2285378, at *3 (D.Md. May 21, 2013). Coster does not appear to contest this point in his Opposition. Accordingly, the Court will dismiss Coster's claims against the Harford County Sheriff's Office and Detention Center.

### 5.    Claims Against the State

In its Motion, the State argues that it is not a proper defendant for a claim under the ADA and the Rehabilitation Act. In its Reply, however, the State agrees to "concede to the status as the 'proper nominal defendant' for purposes of Counts I through III only." (State Reply at 18–19).[8] Indeed, as courts in this state have regularly held, "for purposes of civil liability, Maryland courts ordinarily treat sheriffs as state officials." Ensor v. Jenkins, No. ELH-20-1266, 2021 WL 1139760, at *22 (D.Md. Mar. 25, 2021) (citing cases). And "this Court has often taken the view that Maryland sheriffs are State, not county, actors." Id. (citing cases). Moreover, "public entities are liable under principles of respondeat superior for their employees' violations of the ADA and Rehabilitation Act." Paulone v. City of Frederick, 787 F.Supp.2d 360, 377 (D.Md. 2011). Thus, this Court has held that

---

[8] Counts I through III are the only counts in the Amended Complaint listing the State as a Defendant.

"the State is the proper defendant for plaintiff's [ADA and Rehabilitation Act] claims." Id. The State's arguments urging the Court to reverse this position are unavailing. Accordingly, the Court declines to dismiss the State on the basis that is it not a proper defendant in this action.

The State nevertheless urges the Court to hold that "in the event of any payment of a settlement or judgment by the State in this case," the Court direct that payment of such settlement or judgment be made "from any tax which has been appropriated in the State budget to Harford County, or direct payment from Harford County's share of any income tax collected by the State Comptroller." (State Reply at 19). That question is not ripe before the Court and the Court declines to issue an advisory opinion. See Maryland v. United States, 360 F.Supp.3d 288, 316 (D.Md. 2019) (quoting Flast v. Cohen, 392 U.S. 83, 96 (1968)). Accordingly, the Court will not rule at this time on the source of any payments the State may make upon the resolution of this dispute.

### 6.  ADA and Rehabilitation Act Claims

The State argues that Coster has failed to state a claim under the ADA or the Rehabilitation Act because "in circumstances such as those described in the [Amended Complaint], law enforcement officers are not required to stop, reflect upon, and accommodate a person's disability. They are permitted, instead, to quickly gain control of what is confronting them." (State Mot. at 15). Coster counters that courts in this circuit "have repeatedly held that where, as here, officers fail, in the context of making an arrest, to reasonably accommodate a disabled citizen's needs, the officers violate the ADA." (Pl.'s Mem. Opp'n Def. State Md.'s Mot. Dismiss ["Opp'n to State"] at 12, ECF No. 52). At

bottom, the Court agrees with Coster and will decline to dismiss his claims under the ADA and the Rehabilitation Act.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act provides that no qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Fourth Circuit has recognized that "[t]he scope of liability under the ADA is generally the same as that under the Rehabilitation Act." Wood v. Md. Dep't of Transp., 732 F.App'x 177, 181 (4th Cir. 2018).

To state a claim under these statutes, a plaintiff must allege plausible facts to establish that "(1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005). The State does not contest that Coster's bipolar disorder qualifies as a disability or that he is otherwise qualified to receive law enforcement services. Rather, the State asserts that Coster has failed to state a claim as to the third prong.

The Fourth Circuit has recognized two legal theories supporting Title II disability discrimination claims in the context of police investigations and arrests: "(1) wrongful

26

arrest, where police arrest a suspect based on his disability, not for any criminal activity; and (2) reasonable accommodation, where police properly arrest a suspect but fail to reasonably accommodate his disability during the investigation or arrest, causing him to suffer greater injury or indignity than other arrestees." Waller ex rel. Est. of Hunt v. Danville, 556 F.3d 171, 174 (4th Cir. 2009). "The requirement of 'reasonable accommodation' in the Title II context derives from the statute's reference to 'reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services.'" Paulone, 787 F.Supp.2d at 371 (quoting 42 U.S.C. § 12131(2)). Applicable regulations require, inter alia, that public entities "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). But "[a] reasonable modification does not require the public entity to employ any and all means to make services available to persons with disabilities." Miller v. Hinton, 288 F.App'x 901, 902 (4th Cir. 2008). Rather, the reasonableness of a requested accommodation is determined by the totality of the circumstances; "whether the service, program, or activity operated or owned by the public entity, 'when viewed in its entirety,' is readily accessible." Levy v. Mote, 104 F.Supp.2d 538, 543–544 (D.Md. 2000) (quoting Pascuiti v. New York Yankees, 87 F.Supp.2d 221, 223 (S.D.N.Y. 1999)).

The State relies on Waller in urging this Court to find that Defendants lacked a duty to accommodate Coster's disability given the dangerous nature of the situation. Waller

involved a mentally ill individual who was shot and killed by police after barricading himself in an apartment with a hostage. 556 F.3d at 173. Rejecting the plaintiff's argument that the officers should have approached the situation in a more conciliatory manner, the Fourth Circuit held that "it was unreasonable to expect the sorts of accommodations that plaintiff proposes," including "summoning mental health professionals and family members and administering medication." Waller, 556 F.3d at 175–76. Appearing to adopt an "exigent circumstances" exception to the Title II duty to accommodate—albeit without expressly doing so—the Fourth Circuit noted that "'exigency' is not confined to split-second circumstances." Id. at 175.[9]

Notwithstanding the State's reliance on the case, the facts of Waller are so readily distinguishable from those present in this case as to almost lend support to Coster. As the Fourth Circuit described, in Waller, "[a]lthough the officers did not face an immediate crisis, the situation was nonetheless unstable: the officers could not see or speak to [the hostage], [the decedent] implied that he had weapons, and [the decedent] was growing more and more agitated." 556 F.3d at 175 (citation omitted). Indeed, prior to the officers escalating the situation, the decedent yelled to an officer, "I'm going to blow your goddamned head off." Id. at 173. These facts bear little resemblance to the facts alleged by

---

[9] The Fourth Circuit later clarified that "while there is no separate exigent-circumstances inquiry, the consideration of exigent circumstances is included in the determination of the reasonableness of the accommodation." Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty., 673 F.3d 333, 339 (4th Cir. 2012). The Fourth Circuit added that it was "reluctant to question the snap judgments of law enforcement officials in situations in which a reasonable officer would fear for his safety and for the safety of those he is charged to protect." Id. at 340.

Coster in this case, in which he was seated in a car, plainly visible to officers, and where officers had no indication that he was in possession of a weapon or otherwise posed a threat. (See Am. Compl. ¶ 54).

The Court views as instructive its opinion in Estate of Robert Ethan Saylor v. Regal Cinemas, Inc., No. WMN-13-3089, 2016 WL 4721254 (D.Md. Sept. 9, 2016), aff'd sub nom. Est. of Saylor v. Rochford, 698 F.App'x 72 (4th Cir. 2017). Saylor involved a twenty-six-year-old man with Down syndrome who unlawfully attempted to watch a movie without a ticket. Id. at *1. After a sheriff's deputy asked Saylor to leave, Saylor cursed at the deputy, became agitated, and said that he was "done talking" with the deputy. Id. at *3. Saylor's caretaker asked the Sheriff's deputies to "wait him out"; instead, the deputies forcibly removed Saylor from the theater. Id. at *2. Saylor died during the ensuing struggle. Id. at *1. The Court denied defendant's motion for summary judgment, holding that there was "more than enough evidence" that deputies had failed to accommodate Saylor's disability by, inter alia, simply waiting. Id. at *18–19. The Court rejected defendant's argument based on the inherent dangerousness of the plaintiff as a mentally ill individual, finding that in the absence of a concrete reason to believe that the plaintiff posed an immediate threat of harm, there existed a dispute of fact as to whether the officers were justified in removing him from the theater without further delay. Id. at *19.

Earlier in the Saylor case, the Court denied defendant's motion to dismiss on the basis that "simply waiting would have been the most logical accommodation." Est. of Saylor v. Regal Cinemas, Inc., 54 F.Supp.3d 409, 427 (D.Md. 2014). Similarly, here, on the facts as alleged by Coster, the deputies could and arguably should have simply waited

29

for Coster to calm down. Moreover, the types of judgments the State calls on the Court to make—specifically, that exigent circumstances existed compelling the officers to act without delay—are not at all obvious on the face of the Amended Complaint and appear far better suited to evaluation at summary judgment, and perhaps even left for the judgment of a jury. As this Court has previously noted, "[a]ccording to the Fourth Circuit, 'a reasonable accommodation is one that is feasible or plausible,' and ascertaining the reasonableness of a proposed accommodation is a factual question" that is "certainly not capable of resolution at the motion to dismiss stage." O'Reilly v. Bd. of Child Care of United Methodist Church, Inc., No. JKB-20-0570, 2020 WL 5913242, at *4 (D.Md. Oct. 6, 2020) (quoting Reyazuddin v. Montgomery Cnty., 789 F.3d 407, 414, 416 (4th Cir. 2013)); see also Sacchetti v. Gallaudet Univ., 181 F.Supp.3d 107, 130 (D.D.C. 2016) (finding that whether "officers' alleged conduct amounted to a denial of reasonable accommodations for [plaintiff's] disabilities is a question properly reserved for resolution until a meaningful opportunity for discovery is provided"). Accordingly, the Court finds that Coster has adequately alleged that the State, via its agents, had a duty to accommodate Coster's disability and failed to do so. As a result, the Court declines to dismiss Coster's claims under the ADA and the Rehabilitation Act.

The State next argues that the Court should dismiss Coster's claims under the ADA and the Rehabilitation Act on the basis of the "direct threat" defense. See 42 U.S.C. § 12182(b)(3) (providing that the ADA does not require entities to "permit an individual to participate in or benefit from the goods, services . . . and accommodations of such entity where such individual poses a direct threat to the health or safety of others"). The Supreme

Court and Fourth Circuit have recognized 42 U.S.C. § 12182(b)(3) as establishing an affirmative "direct threat" defense to an ADA claim. See Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73, 78 (2002); Thomas v. The Salvation Army S. Territory, 841 F.3d 632, 640 (4th Cir. 2016).

District courts, however, do not resolve affirmative defenses on a motion to dismiss unless all facts necessary to the defense "clearly appear[] on the face of the complaint." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). The State argues that the fact of the direct threat posed by Coster is established by judicial estoppel as a result of the statement of facts read into the record in Coster's criminal proceeding. But as set forth in Section II.B.2, supra, judicial estoppel does not apply to Coster's claims in this case. Accordingly, the Court declines to dismiss Coster's claims at the motion to dismiss stage on the basis of the State's "direct threat" defense.[10]

### 7.    Qualified Immunity

Defendants assert they are entitled to qualified immunity on Counts IV, V, VI, and X. Count IV has already been dismissed on Heck grounds. At bottom, the Court finds that Defendants are not entitled to qualified immunity on the remaining counts.

---

[10] The Court also notes that the State's overheated rhetoric that Coster seeks to "persuad[e] this Court to be the first to recognize victim-blaming suits under the ADA," (see, e.g., State Reply at 13), a characterization apparently designed to scandalize or shame the Court into siding with the State, is tawdry and unavailing. The Court is applying the law to the facts before it.

### a.   Standard

"Qualified immunity shields police officers who commit constitutional violations from liability when, based on 'clearly established law,' they 'could reasonably believe that their actions were lawful.'" Est. of Jones by Jones v. City of Martinsburg, 961 F.3d 661, 667 (4th Cir. 2020) (quoting Booker v. S.C. Dep't of Corr., 855 F.3d 533, 537–38 (4th Cir. 2017)), as amended (June 10, 2020). Qualified immunity analysis requires courts to conduct a two-step inquiry, asking, in either order: "(1) whether a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation." Id. When determining whether a right is clearly established, "a court does not need to find 'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" Crouse v. Town of Moncks Corner, 848 F.3d 576, 583 (4th Cir. 2017) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). "The burden of establishing a qualified immunity defense rests on the official asserting the defense." Wingate v. Fulford, 987 F.3d 299, 302 (4th Cir. 2021), as amended (Feb. 5, 2021) (citing Meyers v. Baltimore Cnty., 713 F.3d 723, 731 (4th Cir. 2013)).

As to Counts V, VI, and X, Defendants argue that no constitutional violation occurred and, even if a constitutional violation did occur, the law was not clearly established at the time of the violation.

### b.   Count V (Excessive Force on January 10, 2018)

The Fourth Amendment prohibits officers from using excessive force in making an arrest. See Graham v. Connor, 490 U.S. 386, 387 (1989); Betton v. Belue, 942 F.3d 184, 191 (4th Cir. 2019); E.W. by and through T.W. v. Dolgos, 884 F.3d 172, 179 (4th Cir.

2018); <u>Jones v. Buchanan</u>, 325 F.3d 520, 527–28 (4th Cir. 2003). A court analyzes whether the amount of force used was reasonable by assessing the totality of the circumstances, including "the severity of the underlying offense," "whether the suspect poses an immediate threat to the safety of the officer or others," and "whether the suspect is actively resisting arrest or attempting to evade arrest by flight." <u>E.W.</u>, 884 F.3d at 180–82. As the Supreme Court has explained:

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often required to make split second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

<u>Graham</u>, 490 U.S. at 396–97.

County Defendants argue that their use of force was reasonable. With respect to the January 10, 2018 incident, however, County Defendants base their argument not on the facts as alleged in the Amended Complaint, but rather, the facts as described in the January 10, 2018 Incident Report and the stipulated evidence read into the record in Coster's criminal proceeding. But those recitations of fact do not control the Court's review of this Motion. The facts alleged in the Amended Complaint, on the other hand, clearly state a claim for excessive force. Defendants encountered Coster not because of an underlying offense, but because Coster's mother prophylactically sought police intervention with Coster's mental health crisis. (<u>See</u> Am. Compl. ¶¶ 54–55). Moreover, Coster did not pose a significant threat to Defendants. He was unarmed, outnumbered, seated, middle-aged,

and diminutive. (Id. ¶¶ 3, 5). Finally, Coster alleges that he neither actively resisted nor sought to evade arrest. (Id. ¶ 58).

Thus, under the facts as set forth in the Amended Complaint, there is no question that Defendants would have known that the level of force they used was unconstitutionally excessive. See Bailey v. Kennedy, 349 F.3d 731, 745 (4th Cir. 2003) (finding that officers "violated clearly established law," and thus were not entitled qualified immunity, where the officers "lifted [plaintiff] up by his arms while they were bound behind his back, thereby wrenching his shoulder"); Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 901–02 (4th Cir. 2016) (finding that use of taser could constitute excessive force where plaintiff "was stationary, non-violent, and surrounded by people willing to help," notwithstanding that plaintiff "was not allowing his arms to be pulled from the post and was refusing to comply with shouted orders to let go"); Jones v. Chapman, No. ELH-14-2627, 2017 WL 2472220, at *29 (D.Md. June 7, 2017) (finding that "any use of force by Officers . . . after [plaintiff] ceased resisting arrest would not have been objectively reasonable" and denying motion for summary judgment on qualified immunity). County Defendants' arguments to the contrary—virtually all of which rely on facts derived from Coster's criminal proceedings, rather than the Amended Complaint— are unpersuasive.[11] Accordingly, the Court declines to dismiss Count V on qualified immunity grounds.

---

[11] The scant arguments County Defendants advance that attempt to confront the allegations in the Amended Complaint are similarly unavailing. Indeed, County Defendants' argument that Coster fails to make out an allegation for excessive force

### c.       Count VI (Excessive Force on January 11, 2018)

With respect to the January 11, 2018 incident, County Defendants first argue that Coster fails to state a claim against Meador or DiBartolo because they "are accused of nothing more than (i) assisting in the transport detail and providing security during Plaintiff's treatment (ii) and pinning Plaintiff to the bed during Cpl. Goins' purported assault." (Cnty. Defs.' Mot. at 17). But these allegations are sufficient to state a claim for excessive force. See, e.g., McKelvey v. W. Reg'l Jail, No. 3:13-CV-22206, 2016 WL 11483647, at *21 (S.D.W.Va. Jan. 6, 2016) ("The unreasonableness of holding down an injured, compliant detainee so that another officer may strike him is indisputable. . . . Furthermore, it was clearly established . . . that the striking of a restrained detainee who poses no threat to officer safety violates the detainee's right to be free from excessive force."), report and recommendation adopted, No. CV 3:13-22206, 2016 WL 1090619 (S.D.W.Va. Mar. 21, 2016). This argument therefore fails to persuade the Court.

County Defendants next argue that Coster cannot state a claim for excessive force with respect to the January 11, 2018 incident because Coster concedes in the Amended Complaint that he was "extremely agitated" when hospital staff began tightening the device around his shoulder, (Am. Compl. ¶ 108), and because Coster acknowledges a possibility that he may have kicked Meador, (id. ¶ 109). As Coster correctly notes, however, "[t]hose facts are wholly irrelevant to the defendants' conduct once Mr. Coster was pinned, helpless,

---

because of some ambiguity about whether officers lifted him by his elbows or wrists after handcuffing him is particularly far from the mark.

to the bed, and they nevertheless began beating him." (Opp'n to Cnty. at 20). The Court agrees and declines to dismiss on this basis.

County Defendants finally argue that the Court must dismiss Coster's claim because the allegation that Goins "instructed the hospital staff to leave the room" before beating Coster bloody, (Am. Compl. ¶ 111), is "too extreme to credit." (Cnty. Defs.' Mot. at 18). County Defendants cite no case in support of the radical proposition that the Court should dismiss Coster's claim because it simply does not believe him, and the Court declines to do so. To the extent County Defendants submit to the Court that it is simply implausible that police officers would engage in such brazenly unlawful conduct, the Court—which is located, as County Defendants know, in the same city that employed the lawless Gun Trace Task Force[12]—is unpersuaded. The Court therefore finds that County Defendants are not entitled to qualified immunity on Count VI.

### d.   Count X (Bystander Liability)

County Defendants allege that they are entitled to qualified immunity on Coster's claim of bystander liability. An officer may be liable under § 1983 on a theory of bystander liability, if he "(1) knows that a fellow officer is violating an individual's constitutional

---

[12] See generally United States v. Jenkins, No. CR 17-638, 2021 WL 2805948, at *1–2 (D.Md. July 6, 2021) (describing the actions of the former officer-in-charge of the Baltimore Police Department's Gun Trace Task Force, including "us[ing] his position of authority to rob citizens in the course of his duties," "routinely st[ealing] drugs and money from individuals whom he temporarily detained and/or arrested," "breaking into a residential home or a vehicle," "[giving] drugs he stole to another individual to sell on his behalf," and "arrang[ing] to have heroin planted in a vehicle driven by two individuals, after . . . a high-speed pursuit which ended in a collision that resulted in the death of one man").

rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cnty., 302 F.3d 188, 204 (4th Cir. 2002) (footnote omitted); see 42 U.S.C. § 1983 ("Every person who subjects, or causes to be subjected . . . any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured in an action at law. . . ."). In order for an officer to be liable, there must be a "realistic opportunity to intervene and end the unlawful" activity. Randall, 302 F.3d at 204. Determinations of whether an officer "had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless . . . a reasonable jury could not possibly conclude otherwise." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). Of course, "if no excessive force is applied by the fellow officer, the officer witnessing the conduct 'cannot be held liable under bystander liability for a failure to intervene.'" Dodson v. Prince George's Cnty., No. JKS-13-2916, 2016 WL 67255, at *3 (D.Md. Jan. 6, 2016) (quoting Howie v. Prince George's Cnty., No. DKC-2006-3465, 2009 WL 2426018, at *6 (D.Md. Aug. 5, 2009)).

County Defendants offer two arguments for why Coster fails to state a claim for bystander liability. First, they argue that the Court should dismiss the claim because Coster "fails to allege with particularly which officers knew what and chose not to act." (Cnty. Defs.' Mot. at 19). Second, they argue that "based on the Agreed Statement of Facts, Plaintiff cannot establish the first element of the claim – that the officers knew that a fellow officer was violating an individual's constitutional rights." (Cnty. Reply at 17). Both arguments fail.

As to the first argument, it is true that "a complaint cannot rely on 'indeterminate assertions against all defendants.'" Jien v. Perdue Farms, Inc., No. SAG-19-2521, 2020 WL 5544183, at *4 (D.Md. Sept. 16, 2020) (quoting SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 423 (4th Cir. 2015)). It is also true that "if the officers participate[d] in the fray . . . , as plaintiffs claim, then they were not acting as bystanders." Jones, 2017 WL 2472220, at *35 (internal quotation marks omitted); see also Weeden v. Prince George's Cnty., No. GJH-17-2013, 2018 WL 2694441, at *5 (D.Md. June 4, 2018) ("Defendant Police Officers cannot be held liable for both participating in the injury and failing to prevent the injury."). But the incidents described in the Amended Complaint were undoubtedly intense, frenetic, and bewildering. Coster understandably cannot describe with particularity each Individual Defendants' actions at all stages of the alleged beatings. At the motion to dismiss stage, Coster should be afforded the opportunity to essentially plead in the alternative—either the Individual Defendants participated in the beatings or they failed to intervene in the unlawful conduct. See RaceRedi Motorsports, LLC v. Dart Mach., Ltd., 640 F.Supp.2d 660, 666 (D.Md. 2009) ("Rule 8[d] . . . permits a party to plead multiple, and when necessary, inconsistent claims."); see also J.A. v. Miranda, No. PX-16-3953, 2017 WL 3840026, at *3 (D.Md. Sept. 1, 2017) ("Rule 8(a) is not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer. The key is to generally identify those persons responsible for the problem." (internal quotation marks and citations omitted)). The Court will afford Coster the opportunity to engage in discovery before dismissing his bystander liability claim on the basis that it lacks particularity.

County Defendants' second argument requires the Court to accept as true the stipulated evidence entered into the record in Coster's criminal proceeding. Thus, the Court rejects the argument for the reasons set forth in Sections I.A.2 and II.B.2, supra. For these reasons, the Court finds that County Defendants are not entitled to qualified immunity on Coster's bystander liability claim.

### 8.    Failure to State a Claim (Counts IV, V, VII, VIII, X)

County Defendants argue that Coster's "arrest-related claims," in which category they place Counts IV, V, VII, VIII, and X, are "too vague and generalized to support any plausible claims against DFCs Jeric, Bliss, Norton, Robinson, Seman, and Kalambihis, and Does 1 to 20." (Cnty. Defs.' Mot. at 20). County Defendants essentially argue that Coster is engaged in group pleading, generally alleging that large groups of Defendants participated in unlawful actions. As set forth in Section II.B.7.d, supra, "a complaint cannot rely on 'indeterminate assertions against all defendants.'" Jien, 2020 WL 5544183, at *4 (quoting SD3, 801 F.3d at 423).

As an initial matter, the Court notes that Counts IV and VII are barred by Heck and will not include those counts in its analysis. With respect to the remaining counts, Coster's allegations contain sufficient specificity to survive a motion to dismiss at the pleading stage. Among other things, Coster alleges that Jeric, Bliss, Norton, Robinson, Seman, and Kalambihis, and Does 1 to 20 "joined DFC Licato and DFC Majewski in a dogpile on top of Mr. Coster, bringing the total number of Sheriff's Department employees bearing down on Mr. Coster to at least seven," (Am. Compl. ¶ 84); "hit Mr. Coster and pressed their knees, elbows and bodies down into him," (id. ¶ 85); turned away a medical provider after

Coster was beaten and lying on the ground," (id. ¶ 88); and "lifted Mr. Coster by his wrists when his hands were cuffed behind his back," (id. ¶¶ 95, 102). These allegations—combined with Coster's more specific allegations as to particular Defendants in those cases where he knew which Defendants were responsible—are sufficiently specific to survive a motion to dismiss. As this Court has held, "[a]t this early stage in the litigation . . . use of [the phrase] 'Officer Defendants' . . . does not amount to insufficient group pleading under Iqbal and Twombly," because where the plaintiff "alleges direct knowledge of the specific officers involved, he uses only those names" and "[w]hen he does not have this knowledge, he alleges that a definite subgroup of Defendants—the Officer Defendants—committed the alleged acts." Burgess v. Balt. Police Dep't, No. RDB-15-0834, 2016 WL 795975, at *10 (D.Md. Mar. 1, 2016).

In cases where the plaintiff is unable to specify which individuals were responsible for every instance of wrongdoing at the pleading stage, "[t]he key is to generally identify those 'persons responsible for the problem.'" J.A., 2017 WL 3840026, at *3 (quoting Burks v. Raemisch, 555 F.3d 592, 594 (7th Cir. 2009)). "This is especially so where the injured party was the alleged victim of a group beat down which, no doubt, severely disadvantaged him and any onlookers in identifying precisely which officers committed which bad acts." Id. "To put it bluntly, when a plaintiff claims that multiple officers used excessive force, 'it is not reasonable to expect [the] Plaintiff[] to be able to provide a detailed, blow-by-blow recitation of who did what and when.'" Robinson v. Farley, 264 F.Supp.3d 154, 161 (D.D.C. 2017) (quoting Clark v. City of Chicago, No. 10-C-1803, 2010 WL 4781467, at *3 (N.D.Ill. Nov. 17, 2010)).

The cases County Defendants cite to contest this point are inapposite. <u>See, e.g.</u>, <u>Danser v. Stansberry</u>, 772 F.3d 340, 349 (4th Cir. 2014) (addressing <u>respondeat superior</u>, not pleading standards); <u>Jones</u>, 2017 WL 2472220, at *30 (granting summary judgment on the basis that plaintiff failed to produce evidence of an officer's liability, as opposed to evaluating the sufficiency of a pleading at the motion to dismiss stage). The Court finds that the Amended Complaint provides more than enough information to place Defendants on notice of the allegations against them and that Counts V, VIII, and X state a claim for which relief may be granted. Accordingly, the Court declines to dismiss on this basis.

### 9.     Battery Claims (Counts VIII, IX)

County Defendants argue that the Court should dismiss Count IX for essentially the same reasons it argued the Court should dismiss Count VI: (1) that Meador and DiBartolo are accused only of "assisting in the transport detail and pinning Plaintiff to the bed"; (2) that the Defendants had "legal justification for their actions," presumably referring to Coster becoming "agitated"; and (3) that Coster's allegations "are simply too extreme to be 'plausible.'" (Cnty. Defs.' Mot. at 20). For the same reasons the Court denied the Motion as to Count VI, <u>see</u> Section II.B.7.c, <u>supra</u>, it denies the Motion as to Count IX.

County Defendants do not make a specific argument as to Count VIII. Rather, their sole argument on Count VIII appears to be wrapped up in their general argument that Coster's allegations were too vague to state a claim. (Cnty. Defs.' Mot. at 20–22). Thus, for the reasons set forth above, <u>see</u> Section II.B.8, <u>supra</u>, County Defendants' argument fails, and the Court declines to dismiss Count VIII.

### 10.     Injunctive Relief

Among the remedies Coster seeks through this lawsuit is injunctive relief. (See Am. Compl. ¶¶ 198–99). County Defendants argue that Coster is without standing to seek such relief. As County Defendants explain, standing to seek an equitable remedy hinges on whether the plaintiff is "likely to suffer future injury" from the alleged misconduct. City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983). The "threat of injury must be both real and immediate, not conjectural or hypothetical." Id. at 102 (internal quotation marks omitted). Thus, only where a plaintiff is "realistically threatened by a repetition of" the events giving rise to the action can he meet the necessary requirements for seeking an injunction in federal court. Id. at 109.

County Defendants argue that Coster is not entitled to injunctive relief because Coster "indicates that the alleged misconduct in this case, if taken as true, was an isolated episode." (Cnty. Defs.' Mot. at 22). County Defendants cite to the Amended Complaint, in which Coster states that he "needed emergency medical treatment related to his Bipolar I Disorder approximately four times in the past 20 years," and "[n]one of these incidents involved violent or unlawful conduct by Mr. Coster." (Am. Compl. ¶ 48). Coster further notes that he is a resident of Baltimore County, (id. ¶ 38), further reducing his likelihood of interacting with the Defendants in this action.

Coster responds by noting that he is likely to be in Harford County in the future because his wife and his mother, whom he visits regularly, reside there. (Am. Compl. ¶ 47). Coster further argues that if he "is not afforded standing, he will be chilled from engaging in lawful conduct: approaching the police for assistance when he his struggling with mental

42

health issues." (Opp'n to Cnty. at 30). As an initial matter, the Court disagrees; injunctive relief is not the only means of deterring unlawful conduct. Moreover, Coster's subjective fear of future mistreatment is not sufficient to warrant injunctive relief. See Lyons, 461 U.S. at 107 n.8 ("The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant.").

Coster further asserts that "courts routinely recognize that a plaintiff has standing to contest law enforcement misconduct where the conduct to be enjoined arises from circumstances beyond the plaintiff's control, particularly with respect to the defendant's mental health." (Opp'n to Cnty. at 31). But Coster cites just three cases in support of this apparently "routine" finding, and nearly three decades have passed since the most recent of those decisions. See Church v. City of Huntsville, 30 F.3d 1332 (11th Cir. 1994); Lynch v. Baxley, 744 F.2d 1452 (11th Cir. 1984); Grant v. Johnson, No. CIV. 89-269-FR, 1989 WL 97886 (D.Or. Aug. 10, 1989). To the extent this is a routine finding, Coster has not succeeded in demonstrating that fact to the Court.

Finally, Coster argues that "future encounters with the deputies are likely to result in the same problem, because Harford County has embraced the view that individual defendants with mental health issues should be profiled as 'dangerous,' regardless of their actual behavior." (Opp'n to Cnty. at 31). This conclusion is based on Coster's interpretation of arguments made in Defendants' Motions to Dismiss. (See, e.g., State Mot. at 18 ("Disabilities involving psychotic and violent behavior such as Coster's pose a serious danger to law enforcement officers."); Cnty. Mot. at 14 (noting that the fact that Coster

"was off his medication and not directly answering questions, posed a potentially dangerous situation for officers")). But this Court is unpersuaded by the position that Coster is "realistically threatened by a repetition of his experience," see Lyons, 461 U.S. at 109, because of an immoderate argument presented in a brief to the Court.

Coster has conceded that acute episodes of mental illness like the one that led to the incidents underlying this lawsuit have occurred four times in twenty years. (Am. Compl. ¶ 48). In light of this admission, Coster cannot credibly argue that the threat of an injury arising under similar circumstances is "real and immediate." See Lyons, 461 U.S. at 102; see also Medina v. City of New York, No. 19-CV-9412 (AJN), 2020 WL 7028688, at *5 (S.D.N.Y. Nov. 30, 2020) ("The mere fact that such conduct brought the Plaintiff into contact with [Defendants] in a way that resulted in the use of excessive force does not compel the conclusion that the Plaintiff faces a real and imminent threat of reoccurrence."); Falls v. Prince George's Hosp. Ctr., No. DKC-97-1545, 1999 WL 33485550, at *6 (D.Md. Mar. 16, 1999) ("Because there is no 'actual and imminent' threat to [the plaintiff's] rights, she does not have standing to seek injunctive relief."). As the Supreme Court cautioned in Lyons, it is "no more than conjecture to suggest that in every instance of [an] . . . encounter between the police and a citizen, the police will act unconstitutionally and inflict injury without provocation or legal excuse." Lyons, 461 U.S. at 108. Coster seeks relief against precisely the sort of "conjectural threat of injury" the Fourth Circuit has held is "insufficient to justify injunctive relief." Simmons v. Poe, 47 F.3d 1370, 1382 (4th Cir. 1995). None of the cases Coster cites in support of his request for injunctive relief counter

this simple fact. Accordingly, the Court will grant County Defendants' Motion to Dismiss to the extent it seeks to dismiss Coster's request for injunctive relief.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the State's Motion to Dismiss the Amended Complaint (ECF No. 43) and grant in part and deny in part County Defendants' Motion to Dismiss Amended Complaint (ECF No. 46). Specifically, the Court will grant the State's Motion to the extent it seeks dismissal of Coster's claims against the Harford County Sheriff's Office and Detention Center, and will otherwise deny the State's Motion. Further, the Court will grant County Defendants' Motion to the extent it seeks dismissal of Counts IV and VII and dismissal of Coster's claim of injunctive relief, and will otherwise deny County Defendants' Motion. A separate Order follows.

Entered this 30th day of November, 2021.


_____/s/_____
George L. Russell, III
United States District Judge