# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

RODNEY COSTER,               *

       *Plaintiff,*            *
   v.
                           *        No. 1:21-cv-00065-GLR

                           *

STATE OF MARYLAND, *et al.*

       *Defendants.*       *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


## PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL TESTIMONY, PURSUANT TO FED. R. CIV. P. 30(b)(6) and 37(a)(1)

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND ON THE DISPUTE ................................................................... 3

III.  LAW AND ARGUMENT ...................................................................................... 3

     A.    The State Failed To Properly Designate And Prepare Its 30(b)(6) Witnesses For Topics 3(b), 4, And 5 ...................................................... 3

          1.    Topic 3(B) – The Policies And Practice Of The Harford County Sheriff's Department Regarding The Crisis Intervention Team, Emergency Petitions, And Agency Interactions With People Suffering From Mental Health Conditions ................................................. 5

          2.    Topics 4 and 5 – Revisions To Policies And Training On Emergency Petitions, Agency Interactions With People Suffering From Mental Health Conditions, Use Of Force Including Tasers, And Transportation And Guarding Of Inmates At Hospitals .................... 7

     B.    The State Must Designate New 30(b)(6) Witnesses And Have Them Sit For Additional Deposition(s) ................................................................. 10

IV.  CONCLUSION...................................................................................................... 11

i

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alexander v. F.B.I.*,
   186 F.R.D. 148 (D.D.C.1999)..................................................................................................10

*Buycks–Roberson v. Citibank Fed. Savings Bank*,
   162 F.R.D. 338 (N.D. Ill. 1995)...............................................................................................4, 6

*Haney v. Woodward & Lothrop*,
   330 F.2d 940 (4th Cir. 1964) ....................................................................................................10

*Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*,
   390 F. Supp. 2d 479 (D. Md. 2005)........................................................................................4, 8

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*,
   43 F.3d 922 (4th Cir. 1995) .........................................................................................................4

*Marker v. Union Fid. Life Ins.*,
   125 F.R.D. 121 (M.D.N.C. 1989) ............................................................................................10

*Mylan Lab'ys, Inc. v. Akzo, N.V.*,
   2 F.3d 56 (4th Cir. 1993) ............................................................................................................4

*Paice, LLC v. Hyundai Motor Co.*,
   2014 WL 3819204, at *23 (D. Md. June 27, 2014) ...................................................................6

*Rosinbaum v. Flowers Foods, Inc.*,
   238 F. Supp. 3d 738 (E.D.N.C. 2017).........................................................................................4

*Roundpoint Mortgage Servicing Corp. v. Five Brothers Mortgage Co. Services
   and Securing, Inc.*,
   2016 WL 6634911, at *3 (W.D.N.C., 2016).............................................................................7

*United States v. Taylor*,
   166 F.R.D. 356 (M.D.N.C.1996) ...........................................................................................5, 9

*Wilson v. Lakner*,
   228 F.R.D. 524 (D. Md. 2005)....................................................................................................4

**Statutes**

Americans With Disabilities Act Title II – 42 U.S.C. § 12101 ET SEQ......................................10

**Page(s)**

**Other Authorities**

Fed.R. Civ. P. 37(a)(1) ................................................................................................................... 4

Fed.R. Civ. P. 37(a)(3)(B)(ii) ......................................................................................................... 4

Federal Rule of Civil Procedure 30(b)(6) ............................................................................. *passim*

## I.    INTRODUCTION

Defendants, including the State of Maryland (the "State"), have failed to meet their obligations under Federal Rule of Civil Procedure 30(b)(6). Plaintiff served a notice of 30(b)(6) deposition on the State on October 20, 2022. Ex. 1, Plaintiffs' 30(b)(6) Deposition Notice. The parties subsequently met and conferred on the identified topics and agreed to the State's reformulation of those topics. Specifically, as relevant to the instant Motion, Mr. Coster agreed to the following topics:

> Topic 3(b): crisis intervention team, emergency petitions, and agency interaction with people with mental health conditions;
>
> Topics 4 and 5: amendments or revisions to policies and Harford County Sheriff's Office training for deputies about Topic 3 for the last ten years.

Ex. 2, Defendant State of Maryland's Amended Responses and Objections to Plaintiff's 30(b)(6) Deposition Notice (December 23, 2022). Thus, Mr. Coster has satisfied his duty under Rule 30(b)(6) to identify deposition topics with "reasonable particularity." Federal Rule of Civil Procedure 30(b)(6). As the State suggested this language, this Court should refuse to consider any argument that the topics were too broad or otherwise vague.

Despite Mr. Coster's willingness to agree to the topics reformulated by the State, it still failed to meet its duty to designate and adequately prepare individuals to testify on three of the discrete topics agreed to by the parties. Despite the previous meet and confer, Defendants designated witnesses to testify regarding topics 3(b), 4 and 5 who were not sufficiently prepared and were therefore unable to answer the majority of questions posed on the agreed-to topics. The two depositions at issue took place within the past week—on February 27, 2023 and March 2, 2023, respectively. The next day, on March 3, 2023, Plaintiff's counsel sent a deficiency letter to Defendants attempting to resolve the State's deficient preparation and designation of witnesses for

1

the State's reformulated Topics 3(b), 4, and 5 without this Court's intervention. Ex. 3, March 3, 2023 email from J. Kutnik-Bauder to C. Zacarias. Specifically, given that the close of discovery is imminent, Plaintiff's counsel asked Defendants to either produce someone for deposition on the following business day, or agree in writing to conduct the depositions at a subsequent date and time with the agreement that Defendants would waive any objections to the depositions taking place after the close of fact discovery.[1] *Id.* On Sunday, March 5, Defendants responded, disagreeing that the depositions were inadequate: "The Defendants disagree with the factual assertions and legal conclusions in your email regarding these two 30(b)(6) depositions." *Id.* In response to Plaintiff's request to produce someone for a deposition on the penultimate day of discovery, Defendants responded "I'm out of town Sunday and Monday as an instructor at a training," *id.*, thus the parties were unable to meet and confer to resolve this Plaintiff's concern.

The State did not address the other alternative suggestions from Plaintiff's counsel. Given Defendants' unwillingness to agree to additional depositions of properly designated and prepared individuals, and the March 7 deadline for fact discovery, Mr. Coster respectfully moves for this Court to compel the State to designate and produce appropriate representatives who are adequately prepared to testify on the State's reformulated Topics 3(b), 4, and 5. Mr. Coster also moves for this Court to require the State to pay for the costs of the deposition, as well as attorney's fees.

Given the limited time between the depositions and the close of discovery, the parties were unable to formally meet and confer about the designations. However, in his correspondence of deficiency, Mr. Coster cited multiple examples where the State's designees were unknowledgeable

---

[1] Two fact depositions took place on March 7, 2023, the date fact discovery closes. Defendants have previously been unwilling to conduct concurrent depositions. Given the existing scheduling constraints, the only date on which the re-designated 30(b)(6) depositions could have occurred before the close of fact discovery was March 6, 2023.

about basic facts related to the agreed-upon topics. *Id.* Mr. Coster is, however, willing to meet and confer about these deficiencies and is optimistic that the parties can resolve the issues before a ruling from this Court becomes necessary.

## II.     BACKGROUND ON THE DISPUTE

On January 10, 2018, Mr. Coster—who had been diagnosed with Bipolar 1 Disorder decades ago—and his mother traveled to the Harford County Detention Center to obtain assistance in securing a psychological evaluation for Mr. Coster. Instead of receiving assistance, Mr. Coster was tased, beaten, and detained by Harford County Sheriff's Office personnel. During the assault, Mr. Coster's shoulder was dislocated. The next day, while Mr. Coster was in the hospital receiving treatment for his dislocated shoulder, Detention Center officers assaulted him again.

This Motion implicates two of the central factual issues related to the conduct of Harford County Sheriff's Office employees. First, what policies, practices, and trainings the Harford County Sheriff's Office had in place regarding crisis intervention, emergency petitions, and agency interactions with people suffering from mental health conditions; and, second, whether the Harford County Sheriff's Office revised those same policies and trainings related to those topics over the past decade.

In order to answer these questions, Mr. Coster sought state or agency testimony on those exact subjects. The State agreed to designate individuals to testify on these agreed-to subject matters without seeking a protective order to limit the scope of the topics at issue. Despite wielding the pen that drafted these reformulated topics, the State failed to produce knowledgeable witnesses in compliance with Rule 30(b)(6).

## III.     LAW AND ARGUMENT

**A.     The State Failed To Properly Designate And Prepare Its 30(b)(6) Witnesses For Topics 3(b), 4, And 5.**

3

Discovery under the Federal Rules of Civil Procedure ("the Rules") is "broad in scope and freely permitted, and the Rules provide district courts with "broad discretion in [their] resolution of discovery problems." *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993); *see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995). A party may file a motion to compel discovery any time "a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4)." Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(ii). When ruling on motions to compel discovery, the Court should adopt a "liberal treatment to effect their purpose of adequately informing the litigants in civil trials." *Rosinbaum v. Flowers Foods, Inc.*, 238 F. Supp. 3d 738, 748 (E.D.N.C. 2017) (quoting *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).

Rule 30(b)(6) imposes a duty upon the State to designate an individual to testify who has knowledge responsive to the subjects requested in the Rule 30(b)(6) notice. *Wilson v. Lakner*, 228 F.R.D. 524, 528 (D. Md. 2005). The "testimony elicited at a Rule 30(b)(6) deposition represents the knowledge of the [organization], not of the individual deponents," and, if the persons "designated by the [organization] do not possess personal knowledge of the matters set out in the deposition notice, the [organization] is obligated to prepare the designees so that they may give knowledgeable and binding answers for the [organization].*" Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 487 (D. Md. 2005) (quotation marks and citation omitted).

In order to satisfy this duty, the Defendant must adequately prepare its representative to "answer fully, completely, [and] unevasively, the questions posed by [Plaintiffs] as to the relevant subject matters." *Buycks–Roberson v. Citibank Fed. Savings Bank*, 162 F.R.D. 338, 342 (N.D. Ill. 1995). This "implicitly requires such persons to review [in preparation for the deposition] all matters known or reasonably available to it…in order to make the deposition a meaningful one,"

4

and anything less "would totally defeat the purpose of the discovery process." *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C.1996).

       **1.**      **Topic 3(B) – The Policies And Practice Of The Harford County Sheriff's Department Regarding The Crisis Intervention Team, Emergency Petitions, And Agency Interactions With People Suffering From Mental Health Conditions.**

The State designated Mr. Shawn Dundon to testify on February 27, 2023 regarding Topic 3(b). (Ex. 4, Dundon Rough Dep. Tr. 4:6-4:17; 7:24-8:21).[2] Specifically, Mr. Dundon was designated to testify about the policies and practice of the Harford County Sheriff's Office regarding "(1) the Crisis Intervention Team ("CIT"), (2) emergency petitions, and (3) agency interactions with people suffering from mental health conditions" *Id*. *See also* Ex. 2, State's Amended Responses and Objections to Plaintiff's Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6). Mr. Dundon was utterly unprepared to testify on *any* of those topics.

First, Mr. Dundon testified that the only preparation he did for the deposition was to meet briefly with counsel and review documents related to the CIT program. Ex. 4, Dundon Rough Dep. Tr. 12:9-13:7. Second, he testified that he did not work for the Harford County Sheriff's Office. *Id.* at 13:11-13:19. Further, he stated only that he reviewed "[s]ome of the basic documents" for the CIT program, that he collected himself. *Id.* at 12:23-13:7. While Mr. Dundon was able to provide limited testimony regarding the State of Maryland's emergency petition forms, he was unable to provide any testimony relating to the policies or procedures on this subject. *Id.* at 14:23-

---

[2] Mr. Coster has attached full rough deposition transcripts as exhibits to this motion, and has highlighted the portions of each transcript cited in this memorandum for ease of reference. Mr. Coster recognizes the attached exhibits are not the official transcripts for each deposition, as those transcripts are not yet available. But, given the impending close of fact discovery and the recency of these depositions, Plaintiffs have provided the Court with the rough depositions in an effort to illuminate the utter shortcomings in Defendants' 30(b)(6) testimony.

15:16; 128:23-129:7. He was "not aware" of whether the Sheriff's Office has a policy on emergency petitions. *Id.* at 125: 9-125:17; *see also id.* at 128:23-129:7. He was "not aware" of whether an evaluation of the CIT program was ever performed at the Sheriff's Office. *Id.* at 102:12-103:17. He did not know whether anyone at the Sheriff's Office ever conducted supervisory review for CIT incidents. *Id.* at 103:9-103:13.

Mr. Dundon's substantive testimony was as lacking as his preparation. He testified that he was "not aware of particular [Detention Center] procedures" for emergency petitions. *Id.* at 15:8-15:16. He would not answer questions about when a CIT-trained officer must engage in de-escalation. *Id.* at 88:19-90:3. He said there's "no way to answer" the question of whether there was anything that prohibited a CIT-trained officer from using de-escalation techniques while they are still securing a scene. *Id.* at 93:4-93:14. He could not testify about the selection criteria for the CIT team. *Id.* at 99:24-100:2.

Mr. Dundon also refused to answer over sixty questions,[3] rendering his deposition testimony on behalf of the state improperly evasive. *Buycks–Roberson*, 162 F.R.D. at 342. In *Paice, LLC v. Hyundai Motor Co.*, for example, the Court found a 30(b)(6) deponent's answers to be "evasive" and "obstructive" when he consistently testified how it would be hard to give an answer to the attorney's questions, or how he could not answer specific questions the attorney posed. 2014 WL 3819204, at *23 (D. Md. June 27, 2014). Mr. Dundon provided similar testimony, stating he "can't answer" how the Sheriff's Office monitors whether its CIT policy goals are achieved. Ex. 4 at 55:15-55:23. He could not answer questions about de-escalation techniques

---

[3] For the sake of brevity, Mr. Coster provides here several examples rather than an exhaustive list of such refusals. *See* Ex. 4, Dundon Rough Dep. Tr. 102:18-102:24; 113:1-113:15; 114:9-114:20; and 118:6-118:16. *See* Ex. 4, Dundon Rough Dep. Tr. for the complete exchange containing numerous other refusals to answer questions.

under the CIT policy, and he could not testify regarding how the CIT team was selected. *Id.* at 93:4-93:14; 99:24-100:2.

Mr. Dundon was also inadequately prepared, as he could not answer basic questions about the CIT program and the emergency petition process. Both are grounds for a Court's granting of a motion to compel when it is clear the designated witness was not prepared for the deposition. For example, in *Roundpoint Mortgage Servicing Corp. v. Five Brothers Mortgage Co. Services and Securing, Inc.*, the defendant's designated witness was expected to testify about claims submitted by the defendant but instead testified that she had "little to no knowledge of those topics and that prior to the deposition, she had not taken the reasonable steps to review the documents associated with those topics or to gain knowledge of Defendant's information concerning those topics." 2016 WL 6634911, at *3 (W.D.N.C., 2016). Accordingly, the court found that the witness "had not made a reasonable effort to become knowledgeable of that deposition topic" and granted the Plaintiff's motion to compel. *Id.* at *4. Like the witness in *Roundpoint*, Mr. Dundon refused to meaningfully answer any questions about the Sheriff's Office policies with regard to the emergency petition process.

Mr. Dundon's own testimony shows that he was not properly prepared to sit as the 30(b)(6) designee on this topic. Nor was any of the testimony provided by Mr. Dundon proper for a 30(b)(6) designee. The responses are deficient and require the State to produce an additional or replacement designee for deposition testimony.

> **2.   Topics 4 and 5 – Revisions To Policies And Training On Emergency Petitions, Agency Interactions With People Suffering From Mental Health Conditions, Use Of Force Including Tasers, And Transportation And Guarding Of Inmates At Hospitals.**

Similarly, the State designated Mr. Grant Krulock to testify on March 2, 2023 regarding topics 4 and 5 which included revisions to policies and training regarding the following subjects

over the past 10 years: (1) emergency petitions; (2) agency interactions with people suffering from mental health conditions; (3) general use of force (including Taser use); (4) use of force on persons suffering from mental health crises (including Taser use); and (5) transporting and guarding detention center inmates taken to hospitals for medical treatment.

Similar to Mr. Dundon, Mr. Krulock's preparation for the deposition was to meet with his attorneys, and briefly review a limited subset of documents. Ex. 5, Krulock Rough Dep. Tr. 13:10-14:14. Mr. Krulock did not take other measures to prepare for the deposition. Further, he testified that prior to the deposition he had only held his current position as Captain of Planning and Research for the Harford County Sheriff's Office for less than a year, and thus had no exposure to the issue topic prior to that time, and definitely not at the time of the relevant incident. *Id.* at 16:23-16:25. He testified that rather than reviewing materials in preparation for the deposition, he instead relied on his previous familiarity with "some of the policies and the MOUs that were already existing."

Mr. Krulock's lack of preparation or knowledge of relevant policies was apparent at numerous points in his deposition. For instance, Mr. Krulock testified that he could not answer how the Sheriff's Office decides which portions of the CIT policy to revise because he "was not there during this process to actually go through it." *Id.* at 32:4-32:16. Yet the expectation for a witness in a 30(b)(6) deposition is that the witness is able to answer on behalf of the entity, based on a reasonable review of materials and adequate preparation, not simply from his or her personal knowledge. *See Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 487 (D. Md. 2005). Time and again, Mr. Krulock failed to provide substantive answers to basic questions about department policies guiding officer and agency interactions in areas key to Mr. Coster's claims, including policies around use of force including tasers, crisis intervention,

transportation of inmates and guarding of inmates at hospitals, officer training, and disability accommodations. Without meaningful answers from the State's designees regarding the topics for which they were designated, the purpose of discovery is frustrated. *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C.1996).

Given Mr. Krulock's testimony that he assumed his current position in April 2022, and, therefore, could not testify about any amendments to the listed policies prior to his transfer to that position, he was unprepared to address the topic as written by Defendants and agreed to by Plaintiff. Ex. 5, Krulock Rough Dep. Tr. 16:23-16:25. In other words, the State's designated witness stated, under oath, that he was unable to testify regarding changes to policies for *nine of the ten years covered by the two topics*.

Even more, Mr. Krulock was completely unable to testify regarding any of the training associated with these policies. For example, when asked if he knew how the Sheriff's Office kept track of officers who were trained in CIT in 2018, he testified that he "would not know that," and when asked whether he knew how suitability for CIT training was assessed in 2018 (or prior), he said, "No." *Id.* at 25:18-25:25. When asked if he knew what, if any, training the Sheriff's Office provided regarding the use of force policy leading up to January 2018, Mr. Krulock responded, "I would have to look at the training outlines during that time frame to see what the training actually consisted of." *Id.* at 39:7-39:12. It was clear from this testimony that he had not looked into training from the relevant time period in any way. Further, Mr. Krulock did not know whether anyone audited the use of force training in the three years prior to 2018. *Id.* at 39:13-39:18. These are just a few of many examples of Mr. Krulock's failure to meaningfully testify in response to Mr. Coster's proper inquiries.

Mr. Coster's claims include allegations that the State violated Title II of the Americans With Disabilities Act – 42 U.S.C. § 12101 ET SEQ by failing to train officers and employees about disability and their duty to comply with the ADA. Mr. Krulock was designated by the State to address key facts relating to this and other claims, and his inadequate preparation to familiarize himself with the relevant policies frustrates the purpose of discovery. Mr. Krulock's preparation and knowledge as to Topics 4 and 5 are not responsive and do not meet the Rule 30(b)(6) standard for designees. His responses are deficient and require the State to produce an additional designee for deposition testimony.

Neither Mr. Dundon nor Mr. Krulock provided adequate testimony, or were sufficiently prepared by the State to testify, as the State's designated 30(b)(6) witnesses for Topics 3(b), 4, and 5.

### B.   The State Must Designate New 30(b)(6) Witnesses And Have Them Sit For Additional Deposition(s).

Because neither Mr. Dundon nor Mr. Krulock were able to testify regarding the vast majority of the subjects they were designated to testify on, their testimony was deficient and the State is obligated to produce substitute witnesses who are knowledgeable on those topics.

The responding party has an affirmative obligation to substitute a knowledgeable witness once the deficiency of its Rule 30(b)(6) designation becomes apparent during the course of the deposition, "[e]ven if defendant in good faith thought that [its Rule 30(b)(6) designee] would satisfy the deposition notice." *Marker v. Union Fid. Life Ins.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989). Rule 30(b)(6) is designed to prevent entities from "bandying," the practice of presenting employees for their deposition who [once deposed] disclaim knowledge of facts known by other individuals within the entity. *See Alexander v. F.B.I.*, 186 F.R.D. 148, 152 (D.D.C.1999); *see also Haney v. Woodward & Lothrop, Inc.*, 330 F.2d 940, 944 (4th Cir. 1964).

When a party refuses to substitute its 30(b)(6) designees, they can be compelled to do so. That is what the State has done here – two of the witnesses designated by the State were insufficiently prepared and unable to answer questions regarding a number of clearly identified topics. Given the State's deficiency, it should be required to re-designate and prepare additional witnesses to remedy its prior failings, and pay the costs and fees associated with those depositions.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court order Defendants, including the State of Maryland, to (1) immediately produce designees adequately prepared to testify adequately and knowledgeably regarding the subject matter contained in Topics 3(b), 4, and 5 of Plaintiff's Rule 30(b)(6) Notice and who can bind the organization, and (2) pay for the costs of the additional 30(b)(6) depositions, including the costs associated with the recording and transcription of the additional depositions, as well as the attorneys' fees incurred by Mr. Coster as a result of having to conduct additional depositions.

Dated: March 7, 2023                                       Respectfully submitted,

/s/   Michelle Webster
Michelle Webster
(*pro hac vice* admission)
Alex Lakatos
(*pro hac vice* admission)
Reginald Goeke, Federal Bar Number 13527
Cloe Anderson
(*pro hac vice* admission)
Katherine Aragon
(*pro hac vice* admission)
Eliel Flores
(*pro hac vice* admission)
Vionna Moore
(*pro hac vice* admission)
Tara N. More
(*pro hac vice* admission)

Daniel Pearson
(*pro hac vice* admission)
Joshua Raftis
(*pro hac vice* admission)
Kelly Truesdale
(*pro hac vice* admission)

1999 K St. NW
Washington DC 20006-1101
(202) 263-3312
ALakatos@mayerbrown.com
RGoeke@mayerbrown.com
CMAnderson@mayerbrown.com
KAragon@mayerbrown.com
EFlores@mayerbrown.com
VMoore@mayerbrown.com
TMore@mayerbrown.com
DPearson@mayerbrown.com
JRaftis@mayerbrown.com
KTruesdale@mayerbrown.com
MWebster@mayerbrown.com

Kathryne M. Gray
(*pro hac vice* admission)
700 Louisiana Street Ste 3400
Houston, TX 77002
(713) 238-2718
KGray@mayerbrown.com

**MAYER BROWN LLP**

*Counsel for Plaintiff*

/s/    Luciene M. Parsley (with permission)
Luciene M. Parsley (Fed. Bar #27089)
Disability Rights Maryland
1500 Union Ave., Suite 2000
Baltimore, Maryland 21211
Phone: (410) 727-6352 x2494
Facsimile: (410) 727-6389
LucieneP@DisabilityRightsMD.org

**DISABILITY RIGHTS MARYLAND**

12

/s/     Jacqueline Kutnik-Bauder (with permission)
Jacqueline Kutnik-Bauder
(*pro hac vice* admission)Margaret Hart
(*pro hac vice* admission)
Mary Laura Graham
(*pro hac* vice admission)
700 14th Street NW, Suite 400
Washington, D.C. 20005
Tel: 202-319-1000
Fax: 202-319-1010
jonathan_smith@washlaw.org
jacqueline_kutnik-bauder@washlaw.org
margaret_hart@washlaw.org
laura_graham@washlaw.org

**WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS & URBAN
AFFAIRS**

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 7, 2023, a true and correct copy of the foregoing Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Compel Testimony Pursuant to Fed. R. Civ. P. 30(b)(6) and 37(a)(1) was filed electronically using the CM/ECF system, which caused copies to be delivered to all counsel of record.

                                                     /s/     *Michelle N. Webster*
                                                     Michelle N. Webster